DowNey, Judge,
delivered the opinion of the court:
The plaintiff’s cause of action is predicated on a Navy cost-plus contract for the manufacture of aircraft propellers and consists of two items.
It first seeks to recover for salary paid to John G. Jackson in the sum of $5,418.38, with 15 per cent of profit thereon, *172 which was disallowed as a part of the cost of production under the contract, on the ground that the services were legal in their character and barred from inclusion in authorized “ overhead ” by a provision in the contract.
A memorandum furnished by the plaintiff to the Government accountant in charge, entitled “ List of officers and their duties,” is set out in Finding II, in which the fourth paragraph is as follows:
“John G. Jackson, chairman executive committee: Salary $5,500 per annum; has charge of all executive matters, including passing on form and substance of contracts of purchase; company proper performance of its public duties in the way of reports, taxes, municipal requirements; regulating its corporate affairs, including directors’ meetings, and all matters involving the policy of the company.”
The contract provides for the inclusion in cost of production of “ a proper proportion of overhead expenses,” which is defined as “ the indirect labor and other manufacturing expenses and the general and administrative expense of the contractors,” but excludes “ legal expenses incurred in connection with or adjustment of this contract or any legal expenses of an extraordinary nature.”
Such testimony .as there is on the subject shows simply that Mr. Jackson performed the duties defined above without particularizing as to any of the services rendered, in connection with which it is testified that “ Mr. Jackson’s salary was not in any sense for legal services,” but to accept that statement as competent would be but to permit a substitution of the witness’s judgment for that of the court.
In view of the fact that Mr. Jackson was appearing in this matter before the Navy Department as plaintiff’s attorney, and of the further fact that the firm of which he is a member are of plaintiff’s counsel in this case, it would seem that the court might easily have been informed as to the particular services rendered by him, but the record is silent in that respect, and we are left to reach a conclusion predicated on the general statement as to the performance of assigned duties as stated in the memorandum quoted from.
We can not escape the conclusion that a part, at least, of these duties were legal in their nature, and the extent to *173 which ne performed such duties as were nonlegal does not appear. That he had “ charge of all executive matters ” is stated, but, without referring to or quoting from the lexicon as to the meaning of “ executive,” we can not escape consideration of the duties assigned to and presumably performed by other officers whose duties are also set out in the memorandum referred to, and such consideration must lead to the conclusion that the defined duties left for Mr. J ackson were likely such as follow the word “ including.” And first of these is “ passing on form and substance of contracts of purchase.”
In this connection it is to be noted that another of the officers named was charged with the “ negotiating for and purchase of supplies in adequate quantities,” following which the passing on forms of contracts of purchase came in natural sequence with the inescapable inference to follow that that service was a service invoking Mr. Jackson’s legal knowledge and training and was a legal service. What was meant by the words “ and substance ” following “ form ” we do not know.
But we need not analyze further. The conclusion is forced that the calling of Mr. Jackson to the performance of these duties was largely, at least, invoking his legal talents in the performance of a legal service, and if, perchance, it be true that services of value were performed by him not legal in their character, the plaintiff has failed to furnish any basis upon which there might be a segregation and an award on account thereof.
We have seen fit to express our views of the matter, but do not omit to suggest that it is provided by section 17 of the contract that “ if any dispute or doubt arise as to the meaning of anything in the contract * * * the matter shall be referred at once to the Secretary of the Navy for determination, and his decision in the premises shall be conclusive and binding upon the parties hereto.”
It is contended that by reason of the apparent acquiescence of representatives of the United States in payments made by plaintiff to Mr. Jackson in that such payments were made for a time with knowledge and without objection, the United States is estopped and can not now assert the im *174 propriety of including such payment in cost of production. We can not assent to such a view. However strongly such facts may be asserted, they can not fasten on the United States an obligation not only not within the terms of the contract but expressly excluded.
Plaintiff’s second claim is based on the purchase by it from the Lang Propeller Co. of 94 propellers manufactured by the latter company under authority given by the Bureau of Steam Engineering to purchase and apply on its contract. The circumstances of the transaction appear in the findings and need not be repeated.
It is apparent that to deny the plaintiff’s claim on this account works a hardship, and it seems upon a general view of the matter that the Navy Department might well have taken a different course, but these considerations are not sufficient to justify a recovery, for the action is predicated on the contract, and unless there may be recovery thereunder there is no remedy, at least so far as this case is concerned.
The nature of the contract as well as its specific provisions must be borne in mind. It contemplated the purchase of materials by the plaintiff/the manufacture therefrom by the plaintiff of the propellers involved, with reimbursement to the plaintiff of the cost of materials, labor applied thereto in the production of the propellers, a proper overhead, etc., and compensation to the plaintiff of 15 per cent of the ascertained cost to it of production.
The departure from the purposes of the contract by the purchase of propellers to apply thereon from another company was probably not detrimental in this case, so far as the character of the product was concerned, because of the close relations between the two companies and the fact that the technical direction of production in both plants was practically the same, but the corporations were distinct and the transaction must be treated under the contract as if they were strangers to each other.
The contract clearly, as suggested, did not contemplate the purchase by the plaintiff from another of a manufactured product. As to the orders, prices, and awards for materials to be charged to the Grovernment, it provided that *175 they should be subject to the approval of the Chief of the Bureau of Steam Engineering and the Paymaster General. As to changes in the provisions of the contract it provided that “ no such change shall be made except on written order of the Secretary of the Navy.”
If this transaction could be regarded as an order for materials, it is not shown to have had the approval of the Paymaster General. It was authorized by the Bureau of Steam Engineering, which stated simply that the Bureau of Supplies and Accounts (of which the Paymaster General was the head) had been “notified to this effect,” a procedure certainly not equivalent to an approval by the Paymaster General. But to that we do not attach primary importance. Rather is the material infirmity in the transaction found in the fact that the purchase of propellers from another concern was a clear departure from the procedure contemplated by the contract, a material change in the provisions of the contract and, so far as appears, an unauthorized change.
This conclusion renders unnecessary any consideration of subsequent action in the taking over by the department of a part of these propellers and the payment therefor on a lower basis than obtained.
We find in the record no proper basis for a recovery in this action, and the plaintiff’s petition must be dismissed.
Graham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.